**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of Delaware
(State)

Case number *(if known):* _____    Chapter 11

☐ Check if this is an amended filing

## Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

### Part 1:  Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

| | |
|---|---|
| 1. **Chapter of the Bankruptcy Code** | *Check one:*<br>☐ Chapter 7<br>☑ Chapter 11 |

### Part 2:  Identify the Debtor

| | |
|---|---|
| 2. **Debtor's name** | Bennu Titan LLC (f/k/a ATP Titan LLC) |
| 3. **Other names you know the debtor has used in the last 8 years**<br>Include any assumed names, trade names, or *doing business as* names. | ATP Titan LLC |
| 4. **Debtor's federal Employer Identification Number (EIN)** | ☐ Unknown<br>2 7 – 2 6 1 5 1 8 7<br>EIN |

5. **Debtor's address**

**Principal place of business**

1330 Post Oak Boulevard, Suite 1600
Number    Street

c/o Bennu Oil & Gas, LLC

Houston                    TX    77056
City                        State   ZIP Code

Harris
County

**Mailing address, if different**

_____
Number        Street

_____
P.O. Box

_____
City            State   ZIP Code

**Location of principal assets, if different from principal place of business**

Mississippi Canyon Block 941
Number      Street

Outer Continental Shelf, Gulf of Mexico

_____
City            State   ZIP Code

Debtor    **Bennu Titan LLC (f/k/a ATP Titan LLC)**    Case number (if known)_____
_____
Name

---

**6. Debtor's website (URL)**    www.bennuoil.com _____

---

**7. Type of debtor**    ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other type of debtor. Specify: _____

---

**8. Type of debtor's business**

*Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the types of business listed.

☐ Unknown type of business.

---

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

☑ No

☐ Yes. Debtor _____    Relationship _____

District _____ Date filed _____    Case number, if known_____
MM / DD / YYYY

Debtor _____    Relationship _____

District _____ Date filed _____    Case number, if known_____
MM / DD / YYYY

---

| Part 3: | Report About the Case |
| --- | --- |

**10. Venue**

*Check one:*

☑ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

---

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☑ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

---

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☐ No

☑ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

---

Debtor   Bennu Titan LLC (f/k/a ATP Titan LLC)
         Name                                              Case number (if known)_____

| 13. Each petitioner's claim | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Beal Bank USA, as lender | Loan Facility Obligations | $ at least $15,775 |
| | CLMG Corp., as agent | Loan Facility Obligations | $ at least $15,775 |
| | _____ | _____ | $ _____ |
| | | Total of petitioners' claims | $ at least $15,775 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.

## Part 4:   Request for Relief

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**                    **Attorneys**

**Name and mailing address of petitioner**

Beal Bank USA
Name                                              Joseph J. Farnan, Jr. and Michael J. Farnan
                                                  Printed name
6000 Legacy Drive
Number   Street                                   Farnan LLP
                                                  Firm name, if any
Plano                    TX        75024          919 N. Market Street, 12th Floor
City                     State     ZIP Code       Number   Street

**Name and mailing address of petitioner's representative, if any**
                                                  Wilmington              DE       19801
                                                  City                    State    ZIP Code
_____
Name                                              Contact phone   302-777-0300   Email mfarnan@farnanlaw.com

_____
Number   Street                                   Bar number   Bar. No. 100245, Bar No. 5165

_____
City              State     ZIP Code              State   Delaware

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **8/11/16**
              MM / DD / YYYY                      ✘ /s/ Michael J. Farnan
                                                  Signature of attorney
✘ _____
                                                  Date signed   8/11/2016
                         **James Erwin**          MM / DD / YYYY
                         **Authorized Signatory**
Signature of petitioner or representative, including representative's title

Debtor    Bennu Titan LLC (f/k/a ATP Titan LLC)
      Name

Case number (if known) _____

**Name and mailing address of petitioner**

CLMG Corp.
Name

7195 Dallas Parkway
Number    Street

Plano                          TX              75024
City                           State           ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City          State          ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  8/11/16
      MM / DD / YYYY

*James Erwin*
*President*

✗ _____
Signature of petitioner or representative, including representative's title

Thomas E Lauria
Printed name

White & Case LLP
Firm name, if any

200 South Biscayne Boulevard, Suite 4900
Number    Street

Miami                        Florida          33131
City                         State           ZIP Code

Contact phone  305-371-2000    Email tlauria@whitecase.com

Bar number    044083

State    Florida

✗ _____
Signature of attorney

Date signed _____
      MM / DD / YYYY

**Name and mailing address of petitioner**

_____
Name

_____
Number    Street

_____
City          State          ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City          State          ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  _____
      MM / DD / YYYY

✗ _____
Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number    Street

City                         State           ZIP Code

Contact phone _____    Email _____

Bar number _____

State _____

✗ _____
Signature of attorney

Date signed _____
      MM / DD / YYYY

## Rule 1003 Statement Regarding Claim of
## Beal Bank USA

The undersigned hereby states that Beal Bank USA ("BB USA") holds claims in the principal amount of $180,415,444.79 against Bennu Titan LLC, f/k/a ATP Titan LLC, the company named in the attached involuntary petition (the "Debtor") arising out of term loans (the "Term Loans") incurred by the Debtor pursuant to a term loan agreement, dated as of September 24, 2010 (as amended, the "Loan Agreement"), and secured by all assets of the Debtor and the equity interests in the Debtor. The foregoing claim amount is exclusive of interest, fees, costs and other charges.

Pursuant to the Loan Agreement, BB USA agreed to provide the Term Loans to the Debtor in an aggregate stated principal amount of up to $350,000,000. On September 24, 2010 and upon satisfaction of certain conditions to funding, BB USA advanced an initial Term Loan to the Debtor in a principal amount of $150,000,000. Upon satisfaction of certain conditions to subsequent funding, BB USA funded additional Term Loans in principal amounts of $100,000,000, $50,000,000 and $50,000,000 on November 22, 2010, March 11, 2011 and September 29, 2011, respectively.

On April 21, 2011, BB USA approved the transfer of a participation (such participation, the "Bennu Participation") to LPP Mortgage Ltd., an affiliate of BB USA ("LPP"), in respect of the Term Loans for a principal amount of up to $170,000,000 at a price of 100% of the outstanding principal amount participated. Thereafter, BB USA and LPP executed a participation agreement, dated May 2, 2011, under which BB USA agreed to purchase the Bennu Participation in the amount of $170,000,000, and pursuant to which BB USA transferred the Bennu Participation to LPP on such date on the terms and conditions set forth therein.

On February 20, 2014, BB USA approved the purchase of the Bennu Participation from LPP at a price of 100% of the outstanding principal amount participated plus, as applicable, accrued but unpaid interest, fees, expenses and any applicable commissions ($123,259,080.88 as of March 26, 2014, the date such transfer was effected). As a result of the transfer of the Bennu Participation back to BB USA, LPP now owns no interest in the Term Loans (by participation or otherwise) and BB USA now owns 100% of the interest in the Term Loans. The various transfer dates and consideration paid and received by BB USA in connection with each of the foregoing transfers is reflected in the attached documents.

BB USA acquired its claims for investment purposes and not for the purpose of commencing a bankruptcy case against the Debtor.

Date:   August 11, 2016


_____
James Erwin Authorized Signatory
Beal Bank USA

# Beal Bank Nevada

BBN-1

~~BBN-900000011-1~~ / PL-1

## Executive Loan Committee

| | |
|---|---|
| **TO:** | Beal Bank Nevada Executive Loan Committee |
| **FROM:** | Timothy Taylor and Jay D. Squiers |
| **DATE:** | April 21, 2011 |
| **SUBJECT:** | ATP Titan LLC – Sale of Participation in Term Loan |

<u>Purpose</u>

Request is made for:

(i) approval for Beal Bank Nevada (the "**Bank**") to sell a participation in the Term Loan of ATP Titan LLC (the "**Term Loan**") which is secured by all assets of ATP Titan LLC (the "**Borrower**") including, but not limited to, the multi-column, deep draft, floating, drilling and production platform known as the ATP Titan (the "**Platform**"), certain moorings and related equipment associated with the Platform (the "**Moorings**"), certain pipelines and related rights of way (including the gas pipeline right of way) and equipment (the "**Pipeline Assets**"), certain contracts related to the Platform, Moorings and Pipeline Assets identified as Assigned Contract Rights (the "**Assigned Contract Rights**") and other related rights, permits, licenses, spare parts, equipment and other property (the Platform, Moorings, Pipeline Assets and Assigned Contract Rights collectively, the "**Titan Assets**"), to LPP Mortgage Ltd. for a principal amount of the existing Term Loan of up to $170,000,000 at a price of 100% of the outstanding principal amount participated; and

(i) authorization for only (1) D. Andrew Beal, or (2) Jacob Cherner, or (3) Steve Costas to execute such documents and instruments as may be necessary, proper or appropriate to effectuate: (a) the participation of a portion of the Term Loan; (b) receipt of the participation of the Term Loan and other instruments or documentation that are appropriate to evidence the sale of the participation interest in the Term Loan for the benefit of the Bank.

<u>Background</u>

On September 23, 2010, the Executive Loan Committee of the Bank approved making the Term Loan to the Borrower in an amount up to $150,000,000, subject to certain conditions precedent (see **Exhibit A** for a copy of the profile). On September 24, 2010, the Bank advanced the initial term loan in an amount of $150,000,000. Upon the satisfaction of certain additional conditions to funding, the Bank funded additional Term Loans in the amounts of $100,000,000 and $50,000,000 on November 22, 2010 and March 11, 2011, respectively.

<u>Transaction Overview</u>

While the Bank has adequate liquidity at the current time, in light of certain possible uses of liquidity, including the funding of new loans, the Bank desires to create excess liquidity out of an abundance of caution in the event all of the possible uses of liquidity were to occur in the near term. Therefore, the Bank would like to sell a participation in the Term Loan in an amount of up to $170 million to LPP Mortgage, Ltd., an affiliate of the Bank. The Bank will receive an amount equal to 100% of the par amount of the participation. The participation will represent a pro rata portion of the outstanding Term Loans. The Bank will remain responsible for funding any additional Term Loans, as described in the profile attached as Exhibit A. Following the participation, assuming the maximum amount of $170 million is participated, the Bank will continue to have an undivided interest in the Term Loan of $130 million and have the responsibility to fund up to an additional $50 million in Term Loans upon the satisfaction of all conditions precedent to the additional funding.

<u>Documentation</u>

CSG Investments, Inc. will prepare the form of participation agreement. The final form of participation will be reviewed and approved by Larry Adams of Hunton & Williams.

**[Balance of page intentionally blank]**

**Recommendation**

Recommendation is made for:

(i)   approval for Beal Bank Nevada (the "**Bank**") to sell a participation in the Term Loan of ATP Titan LLC (the "**Term Loan**") which is secured by all assets of ATP Titan LLC (the "**Borrower**") including, but not limited to, the multi-column, deep draft, floating, drilling and production platform known as the ATP Titan (the "**Platform**"), certain moorings and related equipment associated with the Platform (the "**Moorings**"), certain pipelines and related rights of way (including the gas pipeline right of way) and equipment (the "**Pipeline Assets**"), certain contracts related to the Platform, Moorings and Pipeline Assets identified as Assigned Contract Rights (the "**Assigned Contract Rights**") and other related rights, permits, licenses, spare parts, equipment and other property (the Platform, Moorings, Pipeline Assets and Assigned Contract Rights collectively, the "**Titan Assets**"), to LPP Mortgage Ltd. for a principal amount of the existing Term Loan of up to $170,000,000 at a price of 100% of the outstanding principal amount participated; and

(ii)  authorization for only (1) D. Andrew Beal, or (2) Jacob Cherner, or (3) Steve Costas to execute such documents and instruments as may be necessary, proper or appropriate to effectuate: (a) the participation of a portion of the Term Loan; (b) receipt of the participation of the Term Loan and other instruments or documentation that are appropriate to evidence the sale of the participation interest in the Term Loan for the benefit of the Bank.

**RECOMMEND:**

_____        _____
Timothy Taylor                          Jay D. Squiers

APPROVED / REJECTED on this 21st day of April 2011.

_____        _____
D. Andrew Beal                          Jacob Cherner

_____        _____
James Erwin                             William T. Saurenmann

Exhibit A – BBN September 23, 2010 Profile

## PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") is made and entered into to be effective as of the 2nd day of May, 2011 (the "Effective Date"), by and between Beal Bank USA, a Nevada thrift company (the "Seller"), and LPP Mortgage Ltd., a Texas limited partnership (the "Purchaser").

### WITNESSETH:

A.      The Seller has originated the loan described on Schedule I attached hereto and incorporated herein by reference (the "Loan"). The Seller and the Purchaser have agreed that the Seller will sell to the Purchaser and the Purchaser will purchase from the Seller a participation interest in the Loan (the "Participation Interest") as set forth on the Participation Certificate, as defined herein, between the parties hereto.

B.      The Seller and the Purchaser desire to enter into this Agreement to set forth their agreements concerning the Participation Interest of the Purchaser in and to the Loan.

NOW, THEREFORE, for and in consideration of the premises, the mutual covenants and agreements of the Seller and the Purchaser herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by the Seller and the Purchaser, the Seller and the Purchaser hereby agree as follows:

1.      Sale of Participation Interest. The Seller hereby sells to the Purchaser, and the Purchaser hereby purchases from the Seller, effective as of the Effective Date, the Participation Interest in the Loan. The Participation Interest and the interest of Seller in the Loan are pro rata. The percentage Participation Interest will be determined from time to time based on (i) the outstanding principal balance of the Loan at such time and (ii) the Purchase Price less payments of principal on the Loan paid to Purchaser at or prior to such time.

2.      Purchase Price; Future Advances of Loan Proceeds. In consideration for the sale by the Seller to the Purchaser of the Participation Interest, concurrently with the execution hereof, the Purchaser has paid or is paying to the Seller the sum of $170,000,000.00 (the "Purchase Price"). The Seller will provide from its own funds all advances of proceeds of the Loan made after the date hereof up to a total aggregate principal amount of $350,000,000.00

3.      Participation Certificate. Concurrently with the execution hereof and the payment of the Purchase Price to the Seller, the Seller and the Purchaser are entering into a Participation Certificate in the form attached hereto as Exhibit A (the "Participation Certificate").

4.      Ownership and Servicing. The Seller shall continue to own the Loan and remain responsible for servicing the Loan for the Purchaser during such time as the Purchaser holds the Participation Interest. The Seller will arrange for the servicing of the Loan through CLMG Corp. during such period.

5.     Payments to the Purchaser.  The Purchaser's share (based on the Participation Interest) of each interest, principal, or fee payment actually received by the Seller in regard to the Loan shall be paid to the Purchaser by wire transfer (or, at the Seller's option, other means reasonably acceptable to the Purchaser) within five (5) Business Days following the receipt by the Seller of such payments. As used herein, "Business Day" means any day on which commercial banks are not authorized or required to close in Nevada.

6.     Fees and Expenses.  The Purchaser shall promptly pay its Participation Interest of all attorneys' fees and other out-of-pocket expenses (each an "Expense") incurred by the Seller in connection with the servicing, administration, workout, or enforcement of the obligations of the borrower of the Loan (the "Borrower") and/or any guarantor or other obligor for the Loan (collectively, the "Guarantors") under any of the documents entered into in regard to the Loan (the "Loan Documents") (whether before or after foreclosure) or in connection with any collateral for the Loan, including the advance of funds required to protect any collateral for the Loan and the interest of the Seller and the Purchaser therein, and the Purchaser shall be entitled to its Participation Interest of any reimbursement payments subsequently received by the Seller with respect to such Expenses. Should the Purchaser fail to make any payment required hereunder within five (5) Business Days of request or demand therefor by the Seller, the Seller may deduct the amount of such payment or payments from any amounts otherwise due to the Purchaser hereunder, whether in the form of payments from the Borrower, proceeds of collateral, or otherwise.

7.     Information Concerning Borrower.  The Seller shall provide the Purchaser, upon the Purchaser's request therefor: (a) copies of the Loan Documents; (b) such information as is then in the Seller's possession in respect of the current status of principal, interest, fee payments, and accruals in respect of the Loan; (c) copies of all current financial statements in respect of the Borrower and each Guarantor then in the Seller's possession with respect to the Loan; and (d) other current financial information then in the Seller's possession with respect to the Loan and bearing on the continuing creditworthiness of the Borrower and the Guarantors under the Loan Documents; provided that nothing contained in this Paragraph 7 shall impose any liability upon the Seller for its failure to provide the Purchaser any of such Loan Documents, information, financial statements, or other information unless such failure constitutes gross negligence on the Seller's part; and provided, further, that the Seller shall not be obligated to provide the Purchaser with any information in violation of law or any contractual restrictions on the disclosure thereof.

8.     Purchaser's Inability to Enforce the Loan Documents.  The Purchaser hereby agrees that it shall not have any right or responsibility to enforce the obligations of the Borrower, any Guarantor, or any other party under the Loan Documents, and except as expressly provided herein to the contrary, all rights pursuant to the Loan Documents (or otherwise) of the Seller to secure or enforce payment of the obligations of the Borrower and/or any Guarantor(s) under the Loan Documents and all rights of the owner of the Loan shall be so held by the Seller for the benefit of the Seller and the Purchaser and such rights shall be exercised solely by and at the option of the Seller in accordance with the Seller's commercially reasonable business judgment. The Purchaser understands that this Agreement does not create a contractual relationship between the Purchaser and the Borrower or any Guarantor and the Purchaser agrees that it shall

not contact the Borrower or any Guarantor directly with regard to the Loan or the Participation Interest.

9.    Performance Through Representatives.  The Seller may perform any of its duties hereunder or otherwise in regard to the Loan by or through officers, directors, employees, attorneys, sub-servicers (including, without limitation, CLMG Corp.), and other agents (collectively, "Representatives"), and the Seller and its Representatives shall be entitled to rely, and shall be fully protected in relying, upon any communication or document believed by it or them to be genuine and correct and to have been signed or made by the proper Person, as hereinafter defined, and, with respect to legal matters, upon the opinion of counsel selected by the Seller.  As used herein, the term "Person" means any individual, firm, corporation, association, partnership, joint venture, trust, other entity, or Tribunal, and the term "Tribunal" means any state, federal, foreign, or other court or governmental department, commission, board, bureau, agency, or instrumentality.

10.    Not a Loan; No Duty to Repurchase the Participation; No Recourse.  No consideration paid by the Purchaser to the Seller to acquire the Participation Interest shall be considered a loan by the Purchaser to the Seller.  The Seller shall have no obligation to repurchase the Participation Interest upon any default by the Borrower or any Guarantor under any of the Loan Documents or in any other event whatsoever.  The sale of the Participation Interest by the Seller to the Purchaser is without recourse, representation, or warranty, express or implied, except for the representations of the Seller contained in Paragraph 15 below.

11.    Seller's Administration and Enforcement of Loan Documents.  The Seller may enter into any amendment or modification of, or may waive compliance with the terms of, any Loan Document without the consent of the Purchaser and may enforce the Loan Documents in accordance with the Seller's commercially reasonable business judgment; provided, however, that without the prior written consent of the Purchaser, which may not unreasonably be withheld or delayed, the Seller shall not: (i) extend the maturity of the Loan; (ii) reduce the interest rate applicable to the Loan or reduce or forgive any fees payable with respect to the Loan; (iii) forgive or reduce all or any portion of the outstanding principal balance of the Loan; or (iv) release all or any material portion of any collateral for the Loan or release or limit in any material way the obligations or liabilities of any Guarantor, surety, or other obligor with respect to the Loan.

12.    Liability and Obligations.  Neither the Seller nor any of its affiliates, officers, directors, employees, attorneys, or agents shall be liable for any action taken or omitted to be taken by any of them hereunder or otherwise in connection with this Agreement or any of the Loan Documents except for its or their own gross negligence or willful misconduct.  Without limiting the generality of the preceding sentence, the Seller (a) shall have no duties or responsibilities except those expressly set forth in this Agreement and the Loan Documents, and shall not by reason of this Agreement or the Loan Documents be a trustee or fiduciary for the Purchaser; (b) shall not be required to initiate any litigation or collection proceedings hereunder or under any other Loan Document except to the extent otherwise specifically provided herein; (c) shall not be responsible to the Purchaser for any recitals, statements, representations, or warranties contained in the Loan Documents, or any certificate or other document referred to or

provided for in, or received by the Purchaser under, the Loan Documents, or for the value, validity, effectiveness, enforceability, or sufficiency of the Loan Documents or any other document referred to or provided for herein or therein or for any failure by any Person to perform any of its obligations hereunder or thereunder; (d) may consult with legal counsel (including counsel for the Borrower), independent public accountants, and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants, or experts; and (e) shall incur no liability under or in respect of this Agreement or the Loan Documents by acting upon any notice, consent, certificate, or other instrument or writing reasonably believed by it to be genuine and signed or sent by the proper party or parties. As to any matters not expressly provided for by this Agreement or the Loan Documents, the Seller shall in all cases be fully protected in acting, or in refraining from acting, hereunder in accordance with instructions signed by the Purchaser, and such instructions of the Purchaser and any action taken or failure to act pursuant thereto shall be binding on the Purchaser; provided, however, that the Seller shall not be required to take any action which exposes the Seller to liability or which is contrary to this Agreement, the Loan Documents, or applicable law. The Seller shall not be deemed to have any fiduciary relationship with the Purchaser, and no implied covenants, functions, responsibilities, duties, obligations, or liabilities shall be read into this Agreement or the Loan Documents, or shall otherwise exist against the Seller.

13.    Other Activities with the Borrower. The Seller may (without having to account therefor to the Purchaser) accept deposits from, lend money to, act as trustee under indentures of, provide merchant banking services to, own securities of, and generally engage in any kind of banking, trust, or other business with, the Borrower, any Guarantor, any of their respective affiliates, and any other Person who may do business with or own securities of the Borrower, any Guarantor, or any of their respective affiliates, all as if it were not administering the Loan and without any duty to account therefor to the Purchaser. The Purchaser shall have no interest in any property taken by the Seller as security for any other loans or any credits extended to the Borrower, any Guarantor, or any of their respective affiliates, other than pursuant to the Loan Documents. Nothing herein shall in any manner be deemed to limit or preclude the right of the Seller to enter into any such other arrangements or to exercise any rights or remedies available in connection therewith, including the exercise of any right of set-off or other rights available as a matter of law.

14.    Purchaser's Representations. The Purchaser represents and warrants to the Seller that: (a) the Purchaser is acquiring the Participation Interest hereunder for its own account in respect of a commercial transaction made in the ordinary course of its business and not with a view to or in connection with any subdivision, resale, or distribution thereof; (b) the Purchaser can bear the economic risk related to the acquisition of the Participation Interest, and is familiar with the ownership of loans like the Loan; (c) the Purchaser has the power and authority to execute and deliver this Agreement and to purchase the Participation Interest as provided herein; (d) the Purchaser has independently and without reliance on the Seller, and based on such documents and information as it has deemed appropriate, made its own credit analysis of the Borrower and its own decision to enter into this Agreement and the Participation Certificate; and (e) the Purchaser has had an opportunity to review and approve the Loan Documents and has approved them.

15.    Seller's Representation.  The Seller represents and warrants to the Purchaser that the Seller owns the Loan and has the power and authority to execute and deliver this Agreement and to sell the Participation Interest as provided herein.

16.    No Reliance by Others.  None of the provisions of this Agreement shall inure to the benefit of the Borrower, any Guarantor, or any other Person other than the Seller and the Purchaser; consequently, neither the Borrower nor any Guarantor shall be, and no other Person other than the Seller and the Purchaser shall be, entitled to rely upon or raise as a claim or defense, in any manner whatsoever, the failure of either the Seller or the Purchaser to comply with the provisions of this Agreement.  Neither the Seller nor the Purchaser shall incur any liability to the Borrower, any Guarantor, or any other Person for any act or omission of the other party.

17.    Not a Partnership.  Neither the execution of this Agreement nor the activities of the Seller and the Purchaser pursuant hereto are intended to be or to create, and the foregoing shall be not be construed to create, any partnership, joint venture, or other joint enterprise between the Seller and the Purchaser.

18.    Term of Agreement.  The term of this Agreement shall commence on the Effective Date and shall continue until the Loan has been paid or otherwise satisfied, all amounts due to the Purchaser pursuant hereto in regard to the Loan have been paid to the Purchaser, and the Seller has otherwise completed all of its obligations hereunder.

19.    Waivers, Etc.  No delay or omission by any party to exercise any right under this Agreement shall impair any such right, nor shall it be construed to be a waiver thereof.  No waiver of any single breach or default under this Agreement shall be deemed a waiver of any other breach or default.  Any waiver, consent, or approval under this Agreement must be in writing to be effective.

20.    Recovery of Costs, Etc.  In the event of any action to enforce the provisions of this Agreement against a party hereto, the prevailing party shall be entitled to recover all costs and expenses incurred in connection therewith including, without limitation, reasonable attorneys' fees and expenses.

21.    Illegality.  The illegality or unenforceability of any provision of this Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement.

22.    Notices.  Except as otherwise provided to the contrary in this Agreement, any notice, consent, approval, direction, authorization, request, or demand required or which any party desires to give to another party under this Agreement must be in writing (including facsimile, telegram, or electronic mail) to be effective and shall be deemed to have been given when actually received or, if mailed, on the third Business Day after it is enclosed in an envelope addressed to the party to be notified at the address stated opposite its signature below (or at such other address as may have been designated by written notice), properly stamped, sealed, and

deposited with the appropriate official postal service. Notwithstanding the foregoing, no notice of change of address shall be effective except upon receipt by the addressee. This Paragraph 22 shall not be construed in any way to require giving of notice or demand to or upon any Person in any situation or for any reason.

23.    Governing Law. This Agreement is performable in Collin County, Texas, and the laws of the State of Texas and of the United States of America shall govern the rights and duties of the parties hereto and the validity, construction, enforcement, and interpretation hereof.

24.    Entire Agreement. This Agreement and the Participation Certificate entered into by the Seller and the Purchaser pursuant hereto (a) embody the entire agreement between the parties in regard to the subject matter of this Agreement, supersede all prior agreements and understandings between such parties, if any, relating to the subject matter hereof, and may be amended only by an instrument in writing executed jointly by an authorized signatory of each party hereto, and (b) may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which constitute, collectively, one agreement; but, in making proof of this Agreement or the Participation Certificate, it shall not be necessary to produce or account for more than one such original counterpart.

25.    LIMITATION OF LIABILITY.    NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR TO ANY OTHER PERSON OR ANY ENTITY CLAIMING RIGHTS BY, THROUGH, OR UNDER THE OTHER PARTY FOR ANY CONSEQUENTIAL, PUNITIVE, SPECIAL, OR OTHER DAMAGES AS A RESULT OF ANY BREACH HEREOF, ANY FAILURE TO PERFORM HEREUNDER, OR ANY INDEMNITY OBLIGATIONS CONTAINED HEREIN OR RELATED HERETO, OTHER THAN ACTUAL DAMAGES ARISING FROM SUCH BREACH, FAILURE TO PERFORM, OR INDEMNITY OBLIGATION.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective, duly authorized signatories on the date(s) specified below, but to be effective as of the Effective Date.

**SELLER:**

Address:

6000 Legacy Drive
Plano, Texas 75024
Attention: James Erwin

BEAL BANK USA

By: _____
Name: _____
Title: _____

**PURCHASER:**
LPP MORTGAGE LTD.

Address:

6000 Legacy Drive
Plano, Texas 75024
Attention: Robert Bowen

By: Property Acceptance Corp., its general partner
By: _____
Name: _____
Title: _____

Exhibit A

## PARTICIPATION CERTIFICATE

This Participation Certificate is being entered into pursuant to, and is governed by, that certain Participation Agreement, dated effective as of May 2, 2011, by and between the Seller and the Purchaser identified below (the "Agreement").

Effective Date: May 2, 2011

Seller: Beal Bank USA

Purchaser: LPP Mortgage Ltd.

Loan: See Schedule I attached hereto

Participation Interest being sold: Determined as provided in Section 1 of the Agreement

Purchase Price: $170,000,000.00

Closing Date: May 2, 2011

**SELLER:**

BEAL BANK USA

By: _____
Name: _____
Title: _____

**PURCHASER:**

LPP MORTGAGE LTD.

By: Property Acceptance Corp., its general partner

By: _____
Name: _____
Title: _____

Schedule I

The Loan

| Borrower Name | Account Number | Loan Date | Outstanding Principal Balance as of the Effective Date |
|---|---|---|---|
| ATP Titan LLC | 9000000-1 | September 24, 2010 | $288,633,333.33 |

ADPB501U        FEDERAL RESERVE BANK OF SAN FRANCISCO - LOS ANGELES        05/02/11

BEAL BANK NEVADA                                              1224-8745-9        PAGE    1
1970 VILLAGE CENTER CIR STE 1
LAS VEGAS,                      NV  89134-6241

                    *********************************
                    *   SUMMARY STATEMENT OF ACCOUNT  *
                    *********************************

                                                    DEBIT              CREDIT

OPENING BALANCE AS OF 05/02                                       363,000,000.00

                10 FUNDS            29,000,000.00

TOTAL                               29,000,000.00                 406,150,251.00

            OPENING BALANCE        363,000,000.00
            TOTAL DEBITS            29,000,000.00
            TOTAL CREDITS          406,150,251.00
CLOSING BALANCE AS OF 05/02        740,150,251.00

| | | | | (TRX/Enter Date) | (Posting Date) | | | | (JE Reference) | (Batch) | |
|---|---|---|---|---|---|---|---|---|---|---|---|

Beg Co # 1
End Co # 1

Beg Acct 10800
End Acct 10800

End JE 9999999999999

Beg TRX Date 05/02/11
End TRX Date 05/02/11

Beg CC 0000
End CC 9999

Beg Post Date 01/01/00
End Post Date 12/31/20

Beg Dept 0000
End Dept 9999

78200

377,150,250.93   Net Bal
406,150,250.93   (29,000,000.00)

| CompanyNumber | CompanyName | ConsolidatedAccountNumber | GLDescription | TRXDATE | ORPSTDDT | DSCRIPTN | DEBITAMT | CRDTAMNT | JRNENTRY  REFERENCE | ORGNTSRC | SOURCDOC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 5/3/2011 0:00 TRF CASH FROM FED TO FHLB | - | 29,000,000.00 | 504 GL 10700 5/2/11 | MMZ 10700 5/2 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 86365DAC3SEL | 15,221,079.82 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 5/3/2011 0:00 ATP PARTICIPATION 5/2/11 | 170,000,000.00 | - | 503 ATP APRTIC. AND CITGO PURCHASE | MMZ 14889 5/2 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 5/3/2011 0:00 CITGO PURCHASE 5/2/11 | 31,500,000.00 | - | 503 ATP APRTIC. AND CITGO PURCHASE | MMZ 14889 5/2 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 86365DAC3SEL | 3,778,473.74 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 88713UAC0SEL | 312,960.58 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 88713UAC0SEL | 1,899,979.30 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 63859CBP7SEL | 3,745,993.03 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 76112BP79SEL | 18,690,833.87 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 81375WFH4SEL | 904,448.43 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 86365DAC3SEL | 38,065,162.90 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 36187XAD8SEL | 100,174,536.67 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 437084GR1SEL | 4,700,413.52 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 437084GR1SEL | 4,112,861.83 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 589929QU5SEL | 838,221.21 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 61744CSV9SEL | 728,063.20 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 161505CG5SEL | 3,936,425.05 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 17307GNR5SEL | 2,259,388.37 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 17307GSJ8SEL | 2,342,099.88 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |
| 1 | Beal Bank USA | 10800-0000-0000 | CASH - FEDERAL RESERVE | 5/2/2011 0:00 | 6/1/2011 0:00 31659TCQ6SEL | 2,939,309.53 | - | 676 Securities Sold to Beal Bank | SH05022011 | GJ |

# LPP Mortgage, Ltd.
## Executive Loan Committee

LPP-____ / CL-__/__

TO:              LPP Mortgage, Ltd. Executive Loan Committee
FROM:         CSG Investments, Inc.
DATE:          February 20, 2014
SUBJECT:     Bennu Titan LLC (formally known as ATP Titan LLC) – Sale of Participation in Term Loan

OWNERSHIP:  47.7%  ☐ LEAD  ☒ NON-LEAD  ☐ NOT APPLICABLE

STATUS:   Sale

ASC 310-30?                      ☐ YES   ☐ NO
    ASC 310-30 – Pooled <u>or</u> Non-Pooled?  ☐ Pooled  ☐ Non-Pooled
    *(Residential loans are pooled. In contrast, Commercial loans are not pooled under ASC 310-30.)*
TROUBLED DEBT RESTRUCTURING?  ☐ YES  ☐ NO  ☑ N/A
    TDR – "Market Interest Rate"?  ☐ YES  ☐ NO  ☐ N/A

### Purpose
Request is made for:

(i) approval for LPP Mortgage, Ltd. ("**LPP**") to sell its participation in the term loans of Bennu Titan LLC (the "**Term Loan**") which is secured by all assets of Bennu Titan LLC (the "**Borrower**") such participation, the "**Bennu Participation**" to Beal Bank USA, an affiliate of LPP, ("**BBUSA**") at a price of 100% of the outstanding principal amount participated  ($120,937,670.17 as of 2/6/2014) plus, as applicable, accrued but unpaid interest, fees, expenses and any applicable commissions; and

(ii) authorization for only for LPP Mortgage, Ltd.: (1) D. Andrew Beal, or (2) Jacob Cherner or (3) a designee appointed by any of the foregoing to execute such documents and instruments as may be necessary, proper or appropriate to effectuate the (a) the sale of the Bennu Participation; (b) transfer of the Bennu Participation and other instruments or documentation that are appropriate to evidence the sale of the Bennu Participation for the benefit of LPP.

LPP Mortgage, Ltd., exposure to one borrower/issuer limits (and aggregation rules) shall be followed.

**Is this a foreign (non-U.S. address) loan?**  No

### Term Loan Funding and Bennu Participation
On September 23, 2010, the Executive Loan Committee of BBUSA approved making the Term Loan to the Borrower in an amount up to $350,000,000, subject to certain conditions precedent. On September 24, 2010, BBUSA advanced the initial term loan in an amount of $150,000,000. Upon the satisfaction of certain additional conditions to funding, BBUSA funded subsequent advances each an additional loan in the amounts of $100,000,000 and $50,000,000 and $50,000,000 on November 22, 2010 and March 11, 2011 and September 29, 2011, respectively. On April 21, 2011 LPP approved the purchase of the Bennu Participation and LPP purchased the Bennu Participation in the amount of $170,000,000 at a price of 100% of the outstanding principal amount participated in the Term Loan to LPP. The Bennu Participation represents a pro rata portion of the outstanding Term Loan.

### Additional Background
The most recent BBUSA Executive Loan Committee profile dated October 30, 2013 approving modification of the Term Loan documents and the Offshore Platform Use Agreement and certain consents is attached as Exhibit A.

Prior loan profiles related to the Term Loan contain additional information surrounding the Term Loan and Borrower and are hereby incorporated by reference.

### Transaction Overview
LPP proposes to sell the Bennu Participation to BBUSA, an affiliate of LPP. Following the sale of the participation of the Term Loan, BBUSA will own 100% interest in the Term Loan and LPP will own none of the Term Loan.

### Current Status
The most recent principal and interest payments on the Term Loan occurred on January 8, 2014. The Term Loan has the following balances:

| | $ Principal | $ Accrued interest through 2/6/14 | $ Total Due |
|---|---|---|---|
| Beal Bank USA | 132,626,218.72 | 1,051,457.52 | 133,677,676.24 |
| LPP Mortgage Ltd. Participation | 120,937,670.17 | 958,791.06 | 121,896,461.23 |
| Total | $253,563,888.89 | $2,010,248.58 | $255,574,137.48 |

The Bennu Participation carries an internal rating of Pass in accordance with regulatory loan appraisal and classification standards.

**Purpose**

Request is made for:

(i)   approval for LPP Mortgage, Ltd. ("**LPP**") to sell its participation in the term loans of Bennu Titan LLC (the "**Term Loan**") which is secured by all assets of Bennu Titan LLC (the "**Borrower**") such participation, the "**Bennu Participation**" to Beal Bank USA, an affiliate of LPP, ("**BBUSA**") at a price of 100% of the outstanding principal amount participated   ($120,937,670.17 as of 2/6/2014) plus, as applicable, accrued but unpaid interest, fees, expenses and any applicable commissions; and

(ii)  authorization for only for LPP Mortgage, Ltd.: (1) D. Andrew Beal, or (2) Jacob Cherner or (3) a designee appointed by any of the foregoing to execute such documents and instruments as may be necessary, proper or appropriate to effectuate the (a) the sale of the Bennu Participation; (b) transfer of the Bennu Participation and other instruments or documentation that are appropriate to evidence the sale of the Bennu Participation for the benefit of LPP.

Beal Bank USA's exposure to one borrower/issuer limits (and aggregation rules) shall be followed.

Patrick Cook

APPROVED / REJECTED on February 20 , 2014.

D. Andrew Beal

James Erwin

Jacob Cherner

Douglas Kroiss

Received by Beal Service Corporation Accounting

By:

Exhibit A- Profile Dated October 30, 2013

LPP MORTGAGE LTD.
BY: PROPERTY ACCEPTANCE CORP.,
GENERAL PARTNER

DOUGLAS KROISS, VICE PRESIDENT

# Beal Bank USA
## Executive Loan Committee

BBUSA-___ / CL-___

TO:        Beal Bank USA Executive Loan Committee
FROM:      CSG Investments, Inc.
DATE:      February 20, 2014
SUBJECT:   Bennu Titan LLC (formally known as ATP Titan LLC) -- Purchase of Participation in Term Loan

OWNERSHIP:  52.3%  ☒ LEAD  ☐ NON-LEAD  ☐ NOT APPLICABLE
STATUS:     Purchase
ASC 310-30?                              ☐ YES   ☐ NO
  ASC 310-30 – Pooled or Non-Pooled?  ☐ Pooled  ☐ Non-Pooled
  *(Residential loans are pooled. In contrast, Commercial loans are not pooled under ASC 310-30.)*
TROUBLED DEBT RESTRUCTURING?             ☐ YES   ☐ NO   ☒ N/A
  TDR – "Market Interest Rate"?          ☐ YES   ☐ NO   ☐ N/A

### Purpose
Request is made for:

(i)   approval for Beal Bank USA ("BBUSA") to purchase all of the participation in the term loans of Bennu Titan LLC (the "Term Loan") which is secured by all assets of Bennu Titan LLC (the "Borrower") such participation, the "Bennu Participation" from LPP Mortgage, Ltd., an affiliate of BBUSA, ("LPP") at a price of 100% of the outstanding principal amount participated ($120,937,670.17 as of 2/6/2014) plus, as applicable, accrued but unpaid interest, fees, expenses and any applicable commissions; and

(ii)  authorization for only: for Beal Bank USA: (1) D. Andrew Beal, or (2) Jacob Cherner or (3) a designee appointed by any of the foregoing to execute such documents and instruments as may be necessary, proper or appropriate to effectuate the (a) the purchase of the Bennu Participation; (b) receipt of the Bennu Participation and other instruments or documentation that are appropriate to evidence the purchase of the Bennu Participation for the benefit of BBUSA.

Beal Bank USA's exposure to one borrower/issuer limits (and aggregation rules) shall be followed.

Is this a foreign (non-U.S. address) loan?    No

### Term Loan Funding and Bennu Participation
On September 23, 2010, the Executive Loan Committee of BBUSA approved making the Term Loan to the Borrower in an amount up to $350,000,000, subject to certain conditions precedent. On September 24, 2010, BBUSA advanced the initial term loan in an amount of $150,000,000. Upon the satisfaction of certain additional conditions to funding, BBUSA funded subsequent advances each an additional loan in the amounts of $100,000,000 and $50,000,000 and $50,000,000 on November 22, 2010 and March 11, 2011 and September 29, 2011, respectively. On April 21, 2011 BBUSA sold the Bennu Participation in the amount of $170,000,000 at a price of 100% of the outstanding principal amount participated in the Term Loan to LPP. The Bennu Participation represents a pro rata portion of the outstanding Term Loan.

### Additional Background
The most recent Executive Loan Committee profile dated October 30, 2013 approving modification of the Term Loan documents and the Offshore Platform Use Agreement and certain consents is attached as Exhibit A.

Prior loan profiles related to the Term Loan contain additional information surrounding the Term Loan and Borrower and are hereby incorporated by reference.

### Transaction Overview
BBUSA proposes to purchase the Bennu Participation from LPP, an affiliate of BBUSA. Following the purchase of the participation of the Term Loan, BBUSA will own 100% interest in the Term Loan.

### Current Status
The most recent principal and interest payments on the Term Loan occurred on January 8, 2014. The Term Loan has the following balances:

|  | $ Principal | $ Accrued Interest through 2/6/14 | $ Total Due |
|---|---|---|---|
| Beal Bank USA | 132,626,218.72 | 1,051,457.52 | 133,677,676.24 |
| LPP Mortgage Ltd. Participation | 120,937,670.17 | 958,791.06 | 121,896,461.23 |
| Total | $253,563,888.89 | $2,010,248.58 | $255,574,137.48 |

The Term Loan carries an internal rating of Pass in accordance with regulatory loan appraisal and classification standards.

**Purpose**

Request is made for:

(i)   approval for Beal Bank USA ("BBUSA") to purchase all of the participation in the term loans of Bennu Titan LLC (the "**Term Loan**") which is secured by all assets of Bennu Titan LLC (the "**Borrower**") such participation, the "**Bennu Participation**" from LPP Mortgage, Ltd., an affiliate of BBUSA, ("LPP") at a price of 100% of the outstanding principal amount participated ($120,937,670.17 as of 2/6/2014) plus, as applicable, accrued but unpaid interest, fees, expenses and any applicable commissions; and

(ii)  authorization for only:  for Beal Bank USA: (1) D. Andrew Beal, or (2) Jacob Cherner or (3) a designee appointed by any of the foregoing to execute such documents and instruments as may be necessary, proper or appropriate to effectuate the (a) the purchase of the Bennu Participation; (b) receipt of the Bennu Participation and other instruments or documentation that are appropriate to evidence the purchase of the Bennu Participation for the benefit of BBUSA.

Beal Bank USA's exposure to one borrower/issuer limits (and aggregation rules) shall be followed.

_____
Patrick Cook

( APPROVED ) REJECTED on February 20 2014.

_____
D. Andrew Beal

_____
Jacob Cherner

_____
James Erwin

_____
Douglas Kroiss

Received by Beal Nevada Service Corporation Accounting

By: _____

Exhibit A- Profile Dated October 30, 2013

# Beal Bank USA

## *Domestic Wire Request*

| | |
|---|---|
| WIRE INSTRUCTIONS RECEIVED VIA | ☐ Fax  ☐ Mail  ☒ In Person |
| DATE OF WIRE TRANSFER (mm/dd/yyyy) | 03/26/2014 |
| REPETITIVE CODE (wire department use) | |
| AMOUNT | $123,259,080.88 |
| FHLB ACCOUNT NO. | 4991001 |
| DESTINATION BANK ABA | 111040195 |
| DESTINATION BANK NAME | Federal Home Loan Bank of Dallas |
| BENEFICIARY (OR FINAL CREDIT) | Beal Bank |
| BENEFICIARY (2) | |
| BENEFICIARY (3) | |
| BENEFICIARY (4) | |
| BENEFICIARY ACCOUNT NO. | 4989902 |
| (OBI) BEAL CUSTOMER NAME | |
| (OBI2) BEAL CUSTOMER ADDRESS | |
| (OBI3) BEAL CUSTOMER CITY, STATE, ZIP | |
| (OBI4) BEAL CUSTOMER ACCOUNT | |
| (BBI) ADDITIONAL INFORMATION | FFC: CLMG Corp. #7500134305, Attn: Cash Processing |
| (BBI2) ADDITIONAL INFORMATION | Ref: Bennu Titan LLC. #900000011 (part repurchase) |
| BEAL SUBSIDARY account number to be charged | |
| JOURNAL NUMBER | 7728 |
| FEE CHARGED | |

BEAL CUSTOMER AUTHORIZATION        Date

### COMPLETE THIS SECTION FOR ALL WIRES

☒ OFAC check done   ☐ Signature verified   ☐ Available balance verified   ☐ Call-back completed (when applicable) by ____ (Initials)

Request Prepared By: CHarrison                    Date: 3/26/14

Printed Name  Candy Harrison

Management Approval:                              Date: 3/26/14

Printed Name  James Erwin  / Doug Kraigg

Secondary Approval:                              Date: 3-26-14

Printed Name  Jacob Cherner

### BEAL BANK USA WIRE DEPARTMENT USE ONLY

Initiated at FHLB By:                    Date: 3/28/2014

Secondary at FHLB By:                    Sequence No: 139

Rev. 10/08/2012

## #7728 Wire out - Bennu Titan LLC LN#900000011

**Beal Bank USA**

Requested:  3/26/2014 - Perry Duderstadt
Effective:    3/26/2014
Comments:  Repurchase participation from LPP.

| Org | GL/GP | Account | App | Bal | Debits | Credits | Effective | Description |
|-----|-------|---------|-----|-----|--------|---------|-----------|-------------|
| Loan Operations | CLEARING - NEW LOAN FUNDING 14869-0000-0000 | | GL | G/L | $123,259,080.88 | $0.00 | 3/26/2014 | Part Repurchase from LPP - Bennu Titan LLC LN#900000011 |
| Loan Operations | CASH - FHLB - 4991001 10700-0000-0000 | | GL | G/L | $0.00 | $123,259,080.88 | 3/26/2014 | Part Repurchase from LPP - Bennu Titan LLC LN#900000011 |
| | | | | | $123,259,080.88 | $123,259,080.88 | | 2 Items |

## Approval

_Signature - Approved By_

Doug Kroig
Printed Name

3/26/14
Date

_Signature - Approved By_

James Erwin
Printed Name

3/26/14
Date

_Signature - Approved By_

Jacob Cherner
Printed Name

3-26-14
Date

Customer Money Transfer System

2014/03/26 10:35

**Print    OK**

```
         Reference: 140326000139
       Repeat Code: 5316002
         Send Date: 2014/03/26
        USD Amount:      123,259,080.88
            Status: CMT PENDING AUTHORIZATION
            Source: CMT
            Method: I
     Business Type: BTR
         Direction: SEND
      Payment Type: 1600
         Initiator: CXS53160, Date: 2014/03/26, Time: 10:35:14
     Debit Account: 4991001 - 53160
     Sending Type: Internal
     Sending Bank: 111040195
    Receiver Type: Internal

  Beneficiary Info: BNF=/4989902
                    BEAL BANK
                    6000 LEGACY DRIVE

   Payment Details: BBI=FFC: CLMG CORP #7500134305
                    ATTN: CASH PROCESSING
                    RE: BENNU TITAN LLC, 900000011
                    PART REPURCHASE
```

## Candy Harrison

| | |
|---|---|
| **From:** | Perry Duderstadt |
| **Sent:** | Wednesday, March 26, 2014 10:05 AM |
| **To:** | Candy Harrison |
| **Subject:** | RE: ATP Wire |
| **Attachments:** | Bennu Titan-JE7728.pdf |

Ok... since we're effective dating the transaction 03/26/2014, the amount is $123,259,080.88. JE is attached.

Screenshot from FIS supporting the above figure:

Bennu Titan Llc (Fka Atp Titan Llc)
900000011-1 Note ▾

Summary
Detail
History                      **Payoff Summary**
Nonmonetary History          Total payoff                    258,431,073.07
Bill Detail                  As of:                          03/26/2014
Billing Schedule             Total daily accrual             60,785.8637750
Rate Detail
Rate/Payment History         **Payoff Detail**
Fees                         Current principal:              253,563,888.89
Payoff                       Interest                          4,867,184.18
  Payoff Summary             Late charges                             0.00
  Participations             Total payoff:                   258,431,073.07
  Note Information
Escrow                       **Excluded Balances**
Participations               Escrow reserve balance              18,144.06
Name and Address
Multiple Collateral          **Participations**
User-Defined                 9600 - Lpp Mortgage Ltd
Collateral Borrowing         Current principal:              120,937,670.17
                             Interest:                         2,321,410.71
                             Total payoff:                   123,259,080.88

**From:** Perry Duderstadt
**Sent:** Wednesday, March 26, 2014 9:50 AM
**To:** Candy Harrison
**Subject:** RE: ATP Wire

Candy,
This would be on a BBUSA wire form (naturally) and the wiring instructions are:

**Destination Bank ABA:** 111040195
**Destination Bank Name:** Federal Home Loan Bank of Dallas
**Beneficiary:** Beal Bank
**Beneficiary Account #:** 4989902
**(BBI) Additional Info:** FFC: CLMG Corp. #7500134305, Attn: Cash Processing
**(BBI2) Additional Info:** Ref: Bennu Titan LLC, #900000011 (part repurchase)

The profile doesn't specify the date of the repurchase, so it looks like it could be either 2/6/2014 (the date of the balance references in the profile) or 2/20/2014 (the date the profile was signed). Based on those two dates, the amount should be:

1

2/6/2014 - $121,867,469.33
Or
2/20/2014 - $122,273,356.03

If we need to use a different date, just let me know the date and I can pull the correct dollar amount for you.
Also, let me know which date/amount so I know what to put on the JE. ☺

Let me know if you need anything else.
Perry

---

**From:** Candy Harrison
**Sent:** Wednesday, March 26, 2014 9:05 AM
**To:** Perry Duderstadt
**Subject:** ATP Wire

Hi Perry,

James is asking for you to prepare a wire.

Candy Harrison
Assistant to James Erwin
President
CLMG Corp.
7195 Dallas Parkway, Plano, TX 75024
469-467-5517 Office
469-467-5550 Fax

2



Bennu Titan Llc (Fka Atp Titan Llc)
900000011-1 Note

---

**Payoff Summary**
Total payoff:          258,431,073.07
As of:                 03/26/2014
Total daily accrual:   60,785.8637750

*Part Balance Already removed.*

Change Quote...

**Payoff Detail**
Current principal:     253,563,888.89
Interest:              4,867,184.18
Late charges:          0.00          Daily accrual of 60785.8637750
Total payoff:          258,431,073.07

**Excluded Balances**
Escrow reserve balance       16,933.56

**Participations**

**Note Information**

| | | | |
|---|---|---|---|
| Category: | C - Commercial | Transactions allowed: | V - User defined |
| TLC: | No | Teller activity: | 0.00 |
| Participation: | Yes | Quote issued: | No |
| Interest type: | S - Simple, in arrears | Loan status: | A - Accruing |
| Accrual basis: | 7 - Actual/actual | Interest accrual: | 4,927,970.0482998 |
| Earn/rebate method: | 1 - Accruing (simple interest) | Interest paid to: | 01/05/2014 |
| Collateral description: | Secured **See Multiple Collateral** | | |