**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>BENNU TITAN LLC (F/K/A ATP TITAN LLC),[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 16-11870 (LSS)<br><br>**Hearing Date: TBD**<br>**Objections Due: TBD** |

**EMERGENCY MOTION OF THE SECURED PARTIES FOR
AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

CLMG Corp., as the agent (the "**Agent**"), and Beal Bank USA, as the lender (the "**Lender**" and, together with the Agent, the "**Secured Parties**"), under that certain Term Loan Agreement, dated as of September 24, 2010 (as amended, the "**Titan Credit Agreement**"), by and among Bennu Titan LLC (f/k/a ATP Titan LLC), as the borrower (the "**Debtor**"), the Agent, and the Lender and the other lenders from time to time party thereto, by and through their undersigned counsel, hereby submit this emergency motion (the "**Trustee Motion**") for an order directing the appointment of a chapter 11 trustee for the Debtor's estate in the above-referenced chapter 11 case (the "**Chapter 11 Case**") pursuant to section 1104(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"). In support of the Trustee Motion, the Secured Parties submit the Declarations of Thomas E Lauria ("**Lauria Decl.**") and Thomas MacWright ("**MacWright Decl.**") filed contemporaneously herewith, and respectfully represent as follows:

---

[1] The last four digits of Bennu Titan LLC's federal taxpayer identification number are 5187.

**PRELIMINARY STATEMENT**

1. The Debtor owns a floating drilling and production platform known as the "Bennu Titan" (the "**Platform**"), that is currently being used by the Debtor's indirect parent, Bennu Oil & Gas, LLC ("**Bennu O&G**"), to produce hydrocarbons in the Gulf of Mexico.

2. All of the Debtor's conflicted managers (which are also managers of the Debtor's parent, Bennu O&G) and its lone independent manager have resigned or have indicated their intention to do so imminently.

3. As such, and as described in more detail herein, the immediate appointment of a chapter 11 trustee is necessary not only to preserve and maximize the value of the Debtor's assets and to properly administer the estate, but also to ensure that Bennu O&G's activities on the Platform adhere to appropriate health and human safety standards and do not give rise to environmental risks or hazards.

4. For the last six years, Bennu O&G (and, prior to that, Bennu O&G's predecessor in interest)[2] has conducted drilling and production activities on the Platform pursuant to a platform use agreement (the "**PUA**") under which, among other things, Bennu O&G is obligated to pay the Debtor $5 million per month (the "**Monthly Use Fee**"), which is the Debtor's primary source of income.

---

[2] On August 17, 2012, Bennu O&G's predecessor, ATP Oil & Gas Corporation ("**ATP O&G**") became insolvent and commenced a case under chapter 11 of the Bankruptcy Code (the "**ATP Chapter 11 Case**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Texas Bankruptcy Court**"). On October 17, 2013, pursuant to an order of the Texas Bankruptcy Court, ATP O&G sold substantially all of its assets including its indirect ownership interest in the Debtor (which was not a debtor in the ATP Chapter 11 Case) to Bennu O&G.

5. About six months ago, Bennu O&G stopped paying the Monthly Use Fee. Since then, the Debtor, under the control of a conflicted board, has taken no action whatsoever to collect any of the unpaid amounts or otherwise enforce its rights under the PUA. There is no reason to expect this course of inaction to change going forward – to the extent the Debtor continues to have any members actually serving on its board, it will continue to be dominated by individuals who also serve on the board of managers of Bennu O&G. The conflict is clear and debilitating.

6. Further complicating matters, of the seven individuals acting as managers of the Debtor on the Petition Date (as defined below), (i) four have since formally resigned their role as manager, (ii) two have indicated their intention to resign and, in any event, lack the capacity to make independent decisions on behalf of the Debtor as a result of actual and insurmountable conflicts of interest arising from their roles as managers to both the Debtor and Bennu O&G and (iii) the remaining manager – the Debtor's only independent and non-conflicted manager – has also indicated that he too intends to resign as soon as possible. Accordingly, the Debtor does not have an unconflicted fiduciary – and soon may have no one at all – capable of acting on behalf of its estate during this Chapter 11 Case.

7. The Debtor needs to promptly take a number of actions, including, among other things, (A) engaging advisors, (B) negotiating debtor in possession financing (which the Secured Parties have indicated they are willing to provide), (C) evaluating and taking appropriate actions with respect to the PUA, (D) preparing, to the extent it becomes necessary, to transition the operation and maintenance of the Platform from Bennu O&G to the Debtor or a qualified third-party operator in a safe manner and in accordance with applicable law and (E) engaging with the

Debtor's stakeholders regarding the best method to maximize the value of the Platform. Absent the appointment of a chapter 11 trustee, it appears the Debtor will not take any of these necessary actions.

8. Accordingly, the Secured Parties respectfully ask the Court to appoint a chapter 11 trustee.

## BACKGROUND

### A. The Titan Loans

9. Since entering into the Titan Credit Agreement in September 2010, the Lender has made loans to the Debtor in an aggregate principal amount of $363,650,000 (the "**Titan Loans**").

10. To secure performance of the Debtor's obligations under the Titan Credit Agreement, the Debtor granted the Agent a security interest in substantially all of its assets, including the Platform, and the Debtor's direct parent, Bennu Holdco LLC ("**Bennu Holdco**"), pledged its 100% membership interest in the Debtor.

11. As of the Petition Date, the Debtor owed $180,415,444.79 under the Titan Credit Agreement, exclusive of interest, fees, costs and other charges.

### B. The Platform

12. Since commencing commercial operations in 2010, the Platform has been located in Mississippi Canyon Block number 941 in the central Gulf of Mexico on the Outer Continental Shelf (as defined in 43 U.S.C. § 1331(a), the "**OCS**").

13.  Although it is currently moored to the floor of the OCS, the Platform is capable of being moved once it is disconnected from the wells owned and operated by Bennu O&G.[3]

14.  Pursuant to the PUA, the Debtor granted Bennu O&G full dominion and control over the use, operation and maintenance of the Platform during the term of the PUA.

15.  Bennu O&G uses the Platform as the production hub in connection with four oil and gas wells, which Bennu O&G operates pursuant to certain offshore oil and gas leases. Its obligations under the PUA include, among other things, paying the Debtor (i) the Monthly Use Fee, and (ii) certain additional amounts related to the maintenance, insurance, tax and other costs associated with the Platform.

C.  **Bennu O&G Defaults Under The PUA**

16.  Beginning February 2016 and continuing to the present, Bennu O&G has failed to pay the Monthly Use Fees owed to the Debtor under the PUA. Following Bennu O&G's initial payment default, the Secured Parties entered into a forbearance agreement (as amended, "**Forbearance Agreement**") with the Debtor and Bennu Holdco pursuant to which the Secured Parties agreed to forbear from exercising certain rights and remedies under the Titan Credit Agreement arising from, among other things, Bennu O&G's failure to pay the Debtor the Monthly Use Fees and the Debtor's failure to make certain principal and interest payments when due and payable under the Titan Credit Agreement.[4]

---

[3] See e.g., Warrior Energy Servs. Corp. v. ATP TITAN, 941 F. Supp.2d 699, 701-702 (E.D. La. 2013) (discussing characteristics of the Platform), aff'd sub nom. Warrior Energy Servs. Corp. v. ATP Titan M/V, 551 Fed. App'x 749 (5th Cir. 2014) (per curiam).

[4] A copy of the Sixth Amended and Restated Forbearance Agreement is attached as Exhibit 1 to the MacWright Declaration.

17. Following the execution of the initial Forbearance Agreement, the Secured Parties and their legal counsel engaged in discussions with the Debtor, Bennu O&G and certain lenders to Bennu O&G, together with their respective legal counsel,[5] regarding various potential restructurings of the PUA and the Titan Loans, as well as potential financing to drill a new well to be provided by some combination of the Secured Parties, Bennu O&G's lenders and other sources of financing. During such discussions, the Secured Parties periodically agreed to extend the forbearance period under the Forbearance Agreement. (MacWright Decl. ¶2)

18. Ultimately, the forbearance period under the Forbearance Agreement expired at 5:00 p.m. (New York time) on July 6, 2016 without the Secured Parties, the Debtor, Bennu O&G and Bennu O&G's lenders having reached an agreement. (Id.)

19. On August 5, 2016, the Debtor sent a notice informing the Secured Parties that as a result of actions taken by Bennu O&G, effective as of August 15, 2015, Mr. Albert J. Fioravanti, the Debtor's only independent manager (the "**Independent Manager**"), would be removed from the Debtor's board of managers and replaced with a new manager of Bennu O&G's choice (the "**Purported Replacement Manager**").[3]

20. On August 11, 2016 (the "**Petition Date**"), the Secured Parties filed an involuntary petition under chapter 11 of the Bankruptcy Code, thereby commencing this Chapter 11 Case.

---

[5] In connection with the negotiation of the Forbearance Agreement and at all times during its effectiveness, the Debtor and Bennu O&G were represented and advised by the same counsel. (MacWright Decl. ¶ 3)

[3] A copy of such notice is attached as Exhibit 2 to the MacWright Declaration.

21. On August 12, 2016, the Debtor sent another notice informing the Secured Parties that (i) the Purported Replacement Manager had declined Bennu O&G's invitation to act as a manager of the Debtor, and (ii) Mr. Fioravanti, therefore, remained a manager of the Debtor.[4]

22. On August 23, 2016, the Secured Parties, through their undersigned counsel, received an unsolicited call from Ed O'Connell of Lord Securities Corporation, the firm that employs the Independent Manager. During the call, Mr. O'Connell informed counsel to the Secured Parties that the Independent Manager intends to resign as soon as possible following entry of an order for relief in this case. (Lauria Decl. ¶ 2)

23. On August 25, 2016, the Debtor informed the Secured Parties that several of the Debtor's and Bennu Holdco's managers and officers also were resigning and provided copies of the resignation notices. Specifically, the notices provided that, effective as of August 24, 2016, (a) four managers were resigning from the Debtor and Bennu Holdco boards (namely, J.P. Hanson, James Chapman, Michiel C. van den Bold and Scott Pearl), and (b) two individuals were resigning as officers of the Debtor and Bennu Holdco (namely, Scott Heck and Scott Heflin).[5]

24. Most recently, the counsel who had advised both the Debtor and Bennu O&G prior to the Petition Date[6] informed counsel to the Secured Parties that the Debtor's remaining managers – John V. Simon and Harrison Bubrosky – will resign from such roles in the near

---

[4] A copy of such notice is attached as Exhibit 3 to the MacWright Declaration.

[5] Copies of the notices in respect of the resignations are attached hereto as Exhibit 4 to the MacWright Declaration.

[6] The Secured Parties understand that the Debtor has not retained counsel to represent it in this Chapter 11 Case.

future. (MacWright Decl. ¶ 4) In any event, each of these individuals also suffer from actual and insurmountable conflicts of interests as a result of their dual role as managers to both Bennu O&G and the Debtor. As such, they lack the ability to make the key and immediate decisions that will be required of a fiduciary in this Chapter 11 Case, particularly decisions concerning the Platform being used without payment as required by the PUA. The Secured Parties also understand that the Debtor has no employees or unconflicted officers with the authority to make decisions on its behalf.

## JURISDICTION AND VENUE

25.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein are sections 1104(a) and 105(a) of the Bankruptcy Code.

## RELIEF REQUESTED

26.    By this Trustee Motion, the Secured Parties seek entry of an order, substantially in the form attached hereto as Exhibit "A", directing the appointment of a chapter 11 trustee for the Debtor's estate pursuant to section 1104(a) of the Bankruptcy Code. No prior or other request for the relief requested in this Trustee Motion has been made to this or any other court.

## ARGUMENT

27.    The appointment of a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code is warranted because the prepetition managers are conflicted, and soon, there will be no management at all to direct the Debtor's business and activities, including its statutorily mandated duty to look out for the interests of its stakeholders. Accordingly, the Court

should direct the Office of the United States Trustee (the "**United States Trustee**") to appoint a chapter 11 trustee for the Debtor's estate.

### A. Legal Standards Governing Appointment Of A Chapter 11 Trustee

28. Section 1104 of the Bankruptcy Code governs the appointment of a bankruptcy trustee in a chapter 11 case, providing the grounds on which a court may, or is required, to order such appointments. 11 U.S.C. § 1104. Section 1104(a) provides that the bankruptcy court shall order the appointment of a chapter 11 trustee:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a) (emphasis added).

29. Section 1104(a) is phrased in the disjunctive, meaning that there are two independent predicates for the appointment of a chapter 11 trustee. Section 1104(a)(1) of the Bankruptcy Code provides for the mandatory appointment of a trustee when "cause" exists. See 11 U.S.C. § 1104(a)(1). Additionally, section 1104(a)(2) of the Bankruptcy Code affords the Court a flexible standard whereby, without regard to statutory "cause", the Court has discretion

9

to appoint a trustee when such appointment is in the best interests of the parties. See 11 U.S.C. § 1104(a)(2).

30.     While section 1104(a)(1) of the Bankruptcy Code expressly identifies four bases upon which "cause" may be found – fraud, dishonesty, incompetence, and gross management – those enumerated grounds are not exclusive, and the Bankruptcy Code grants courts discretion in the decision whether "cause" exists to appoint a trustee to protect creditors while also affording debtors a chance of reorganizing. See Marvel Entm't Group, 140 F.3d 463, 472-73 (3d Cir. 1988) (noting that it is within the discretion of the bankruptcy court to appoint a trustee for reasons not enumerated in the Bankruptcy Code). Courts determine whether such additional grounds for the appointment of a chapter 11 trustee exist on a case-by-case basis. See In re V. Savino Oil & Heating Co., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) ("[T]he words 'including' and 'or similar cause' before and after the enumerated examples of cause . . . indicate that the grounds for appointing a reorganization trustee are not even limited to the derelictions specifically enumerated."); In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989) (finding the decision to appoint a trustee "must be made on a case-by-case basis"); see also 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").

31.     Once a court finds that "cause" exists, a trustee shall be appointed under the clear language of section 1104 of the Bankruptcy Code. See 11 U.S.C. § 1104(a). In such event, the appointment is mandatory and without discretion. See In re V. Savino Oil, 99 B.R. at 525 (holding that a trustee must be appointed if cause is shown); In re Deena Packaging Indus., Inc., 29 B.R. 705, 706 (Bankr. S.D.N.Y. 1983) ("[A]ppointing a trustee for cause is not a discretionary function.").

32. Based on the facts and circumstances set forth herein, the appointment of a chapter 11 trustee is appropriate pursuant to either section 1104(a)(1) or (2) of the Bankruptcy Code.

### B. The Absence of Unconflicted Management Constitutes Cause For Appointment Of A Chapter 11 Trustee Under Section 1104(a)(1)

33. Courts have long recognized that cause exists to appoint a chapter 11 trustee where the debtor lacks an unconflicted, independent fiduciary to manage the business in the best interests of its creditors and the estate. See, e.g., In re Colo.-UTE Elec. Ass'n, 120 B.R. 164, 175 (Bankr. D. Colo. 1990) (granting motion to appoint trustee where "[t]he former chairman and vice chairman resigned due to conflict between what their respective co-ops desired and what was best for Colorado-Ute."); Marvel Entm't Grp., 140 F.3d at 473 (affirming appointment of trustee where debtor in possession was conflicted); In re Sharon Steel Corp., 871 F.2d 1217 at 1228 (affirming appointment of trustee based, in part, on debtor's conflict of interest); Modanlo v. Ahan (In re Modanlo), 342 B.R. 238, 242 (D. Md. 2006) (affirming bankruptcy court's finding of "cause" for the appointment of trustee on the basis of, among other things, "the debtor's wearing of multiple hats and holding of multiple and perhaps conflicting duties to the creditors or shareholders of different companies as well as to the creditors of this estate"); In re McCorhill Publ'g Inc., 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987) (holding that conflicting interest in various related entities held by the debtor's directors warranted the appointment of a trustee).

34. In the present case, a majority of the Debtor's managers are also on the board of the Debtor's parent, Bennu O&G, which is the counterparty to the agreement that is the sole material source of revenue for the Debtor – the defaulted PUA. Making matters worse, the Debtor's conflicted managers have been advised by the same counsel that also advises Bennu

11

O&G.  The impact of this conflict has been direct and severe.  Despite the fact that Bennu O&G's failure to make required payments under the PUA rendered the Debtor insolvent, the Debtor has for over six months taken no action to enforce its rights under the PUA or to otherwise protect its interests or those of its stakeholders, including the Secured Parties.  Indeed, fairly stated, it is completely incapable of doing so.  When the Debtor's remaining managers resign, as they have indicated they will, the Debtor will go from being conflicted to being functionally incapacitated.

35. In short, the Debtor does not have an unconflicted, independent fiduciary to administer this Chapter 11 Case, and upon the forthcoming resignations of the remaining mangers will lack <u>any</u> management whatsoever.  This constitutes "cause" under section 1104(a)(1) of the Bankruptcy Code and a chapter 11 trustee should be promptly appointed for the Debtor.

### C. The Court Should Also Appoint A Chapter 11 Trustee Because Such Appointment Is In The Best Interests Of The Estate And All Other Parties

36. Separate and apart from the obvious "cause" that exists here for the appointment of a chapter 11 trustee under section 1104(a)(1) of the Bankruptcy Code, section 1104(a)(2) creates a flexible standard that authorizes the Court to appoint a trustee when it is in the best interests of the creditors and other interests of the estate.  <u>See</u> 11 U.S.C. § 1104(a)(2); <u>In re Sharon Steel Corp.</u>, 86 B.R. 455, 458 (Bankr. W.D. Pa. 1988) (explaining that "if there is insufficient cause to appoint a trustee under [section] 1104(a)(1), or if the cause cannot be proven, a trustee may still be appointed [under section 1104(a)(2) if it is in the interest of creditors, some group of equity security holders, and other interests of the estate"); <u>see also</u> <u>Marvel Entm't Grp.</u>, 140 F.3d at 474.

37.  In determining whether a trustee should be appointed "in the interests of creditors," courts "look to practical realities and necessities."  In re Ridgemour Meyer Props., LLC, 413 B.R. 101, 112 (Bankr. S.D.N.Y. 2008) (citing Ionosphere Clubs, Inc., 113 B.R.164, 168 (Bankr. S.D.N.Y. 1990)).  Courts consider such factors as: "(i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment."  Ionosphere Clubs, 113 B.R. at 168.  "[T]he factors . . . are diverse and in essence reflect the practical reality that a trustee is needed."  In re Sharon Steel Corp., 86 B.R. at 458; see also In re Wings Digital Corp., 2005 Bankr. LEXIS 3476, at *14 (Bankr. S.D.N.Y. May 16, 2005) (noting that section 1104(a)(2) is a "lesser standard" than section 110(4)(a)(1)).

38.  Here, the benefits of appointing of a chapter 11 trustee are manifest.  Such appointment is plainly in the best interest of creditors and the other interests of the estate and greatly outweighs any burden or detriment to the Debtor.  In addition to customary concerns regarding maximizing value and estate administration, the nature of the Debtor's business – the ownership of a drilling and production platform that[6] is currently being operated to produce oil and gas in the Gulf of Mexico – gives rise to other acute concerns and issues that mandate an independent fiduciary.  It is beyond dispute that the nature of the operations being conducted on

---

[6] To the best of the Secured Parties' knowledge Bennu O&G continues to conduct operations on the Platform.

the Debtor's Platform involve significant health, human safety and environmental issues.[7] The appointment of an independent fiduciary will ensure that such matters are properly attended to from the perspective of the Debtor's estate.

## NOTICE

39.    Notice of this Trustee Motion has been provided to the Debtor, the Office of the United States Trustee for the District of Delaware, and all parties requesting notice pursuant to Bankruptcy Rule 2002. The Secured Parties submit that no other or further notice need be provided.

[*Remainder of page intentionally left blank.*]

---

[7] The Secured Parties are not aware of any current emergency related to health, human safety or environmental hazards or risks.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Secured Parties respectfully request that the Court enter an order appointing a chapter 11 trustee for the Debtor's estate pursuant to section 1104(a) of the Bankruptcy Code and granting such other relief as the Court deems just and proper.

Dated: September 15, 2016

        Respectfully submitted,

        **FARNAN LLP**

        By: /s/ Michael J. Farnan
            Joseph J. Farnan, Jr., Esq. (Bar No. 100245)
            Joseph J. Farnan, III, Esq. (Bar No. 3945)
            Michael J. Farnan, Esq. (Bar No. 5165)
            919 North Market St., 12th Floor
            Wilmington, DE 19801
            Telephone:   (302) 777-0300
            Facsimile:   (302) 777-0301
            farnan@farnanlaw.com
            jjfarnan@farnanlaw.com
            mfarnan@farnanlaw.com

        —and—

        **WHITE & CASE LLP**

        Thomas E Lauria, Esq. (*pro hac vice* to be filed)
        Southeast Financial Center, Suite 4900
        200 South Biscayne Blvd.
        Miami, FL 33131
        Telephone:   (305) 371-2700
        Facsimile:   (305) 358-5744
        tlauria@whitecase.com

        Glenn M. Kurtz, Esq. (*pro hac vice* to be filed)
        Thomas MacWright, Esq. (*pro hac vice* to be filed)
        1155 Avenue of the Americas
        New York, NY 10036

Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gkurtz@whitecase.com
tmacwright@whitecase.com

*Attorneys for the Secured Parties*